**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PURE O NATURAL PRODUCTS, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>EBIN NEW YORK, INC.,<br><br>*Defendant*. | Civil No.: 25-cv-16780 (KSH) (AME)<br><br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

## I. Introduction

This matter comes before the Court on defendant EBIN New York, Inc.'s partial motion to dismiss and to strike certain information in the complaint as immaterial and prejudicial. (D.E. 13.) The parties' dispute arises from EBIN's development and distribution of its "LOCK'N" hair products. Plaintiff Pure O Natural Products, LLC alleges that EBIN's "LOCK'N" products infringe on its "LOC N" trademark, which it also uses in the hair product industry. For the reasons set forth below, EBIN's motion is granted in part and denied in part.

## II. Background

The following is taken from the complaint and is assumed to be true for purposes of this motion. Pure O and EBIN market and distribute hair styling and care products for textured hair, and have overlapping distributors, retailers, and target the same consumer base. (D.E. 1, Compl. ¶¶ 16, 24, 28-33.) Pure O is "[l]ed by licensed cosmetology educated Nicole Shuler, who created the Lock & Twist Gel in 2013 and . . . developed the Original LOC N Gel" in 2014. (*Id.* ¶ 12.) The LOC N products also include LOC N Loc & Braid Growth Oil and LOC N Shine Spray.

(*Id.* ¶ 25.) Pure O "has continuously and exclusively used the LOC N mark (and related LOC N design) in U.S. commerce since at least April 2014." (*Id.* ¶¶ 12, 24-26.)

"The LOC N mark features the term 'LOC N' in block-style gold lettering, with 'LOC' positioned above a larger, stylized 'N' that incorporates the specific product name, all set against a burgundy background that transitions to a darker shade in an ombré effect toward the lower left." (*Id.* ¶ 13.) The LOC N products are "recognized for their high-quality ingredients and the unique benefits they provide for locks and braids." (*Id.*) And "[t]hrough sustained sales, advertising, and promotion, LOC N has come to signify to distributors, retailers, and consumers that the products originate exclusively with Pure O." (*Id.* ¶ 27.)

In 2019, EBIN applied to the United States Patent and Trademark Office ("USPTO") for trademark registration for the mark LOCK 'N POMADE, which was registered to it on November 24, 2020 as U.S. Reg. No. 6206897. (*Id.* ¶ 40.) In 2023, EBIN applied for trademark registration for the mark LOCK'N SHINE, which was registered to it on October 8, 2024 as U.S. Reg. No. 7532260. (*Id.*) Pure O alleges that these registrations "impede Pure O's federal protection and increase marketplace crowding around Pure O's LOC N brand." (*Id.* ¶ 42.) It also alleges that these registrations "create[] a substantial likelihood of confusion" as to the source of the products. (*Id.* ¶¶ 48-49.)

On January 28, 2022, Pure O applied to register the mark LOC N "in International Class 3 for 'hair-care preparations.'" (*Id.* ¶ 6.) The USPTO "examined and approved the application for publication, determining that the mark was registrable and not merely descriptive." (*Id.*) It was published for opposition on January 9, 2024. (*Id.*) EBIN filed an opposition with the

Trademark Trial and Appeal Board ("TTAB")[1], alleging that Pure O's LOC N mark was "merely descriptive" and that Pure O was not the rightful owner of the mark. (*Id.* ¶ 7.)

On June 18, 2024, Pure O filed a motion in the TTAB to dismiss EBIN's opposition. (*Id.* ¶¶ 8, 43 & Ex. B, TTAB Mtn. to Dismiss.) Pure O argued that EBIN was attempting "to undermine the validity of Pure O's senior LOC N mark to justify its own junior use and subsequent registration efforts"; that EBIN's "mere descriptiveness" claim was unsustainable since the USPTO had already approved the LOC N application for publication, and therefore found it was not merely descriptive; and that EBIN did not meaningfully refute that Pure O was the rightful owner of the mark. (*Id.* ¶¶ 8-10, 43-46.) It appears this action remains ongoing.[2]

On October 21, 2025, Pure O filed this action. (D.E. 1.) It raises counts for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114 and common law (Count One); violations of the Lanham Act, 15 U.S.C. § 1125(a) (Count Two); and common law unfair competition (Count Three). (*Id.* ¶¶ 52-86.) Pure O also seeks declaratory relief: cancellation of EBIN's registrations under the Lanham Act, 15 U.S.C. § 1119 (Count Four) and a declaration that Pure O's rights in its LOC N marks are entitled to registration and are senior to EBIN's marks (Count Five). (*Id.* ¶¶ 87-98.)

On January 7, 2026, EBIN moved to dismiss Counts One through Three and to strike paragraphs 34 through 39 of the complaint and paragraph F of the prayer for relief. (D.E. 13.) EBIN argues that the complaint does not allege enough facts to support Pure O's Lanham Act or

---

[1] The TTAB "has limited jurisdiction 'to determine only the right to register' a trademark and cannot 'decide broader questions of infringement or unfair competition.'" *Beasley v. Howard*, 14 F.4th 226, 232-33 (3d Cir. 2021) (quoting *FirstHealth of Carolinas, Inc. v. CareFirst of Md., Inc.*, 479 F.3d 825, 828 (Fed. Cir. 2007)).

[2] At some point, the parties attempted to settle their dispute via a Consent to Registration/Coexistence Agreement. (*Id.* ¶ 94.) This agreement was never finalized. (*Id.*)

common law claims, and as such does not give it fair notice of the basis for these claims. (*Id.* at 5-14.) Its motion to strike takes issue with Pure O's reference to a case it initiated in 2023 in the Northern District of Georgia, where Pure O raised trademark infringement claims of its LOC N mark against a different defendant. (*Id.* at 15-16.) EBIN argues since it was not a party to that case, the lawsuit is immaterial, irrelevant, and prejudicial. (*Id.*) And in paragraph F of the prayer for relief, Pure O asks for contract remedies, but EBIN points out that there is no contract between the parties that Pure O can sue under. (*Id.* at 17.)

Pure O filed its opposition seven days late, arguing without providing citations that the complaint pleads enough facts to support its Lanham Act and common law claims. (D.E. 14.) The Court extended EBIN's reply deadline to account for Pure O's late opposition, which EBIN timely filed. (D.E. 17, 19.)

**III. Standard of Review**

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation and quotation marks omitted). While "detailed factual allegations" are not required, a plaintiff must provide the "grounds" of his "entitle[ment] to relief" with facts "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and quotation marks omitted).

"To determine the sufficiency of a complaint," a court's inquiry is routinely broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint

and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Elements of a claim are sufficiently alleged when the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim has "facial plausibility" when there is sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard does not impose "a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the claim. *Twombly*, 550 U.S. at 556. However, "labels and conclusions" and "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citation modified) (quoting *Twombly*, 550 U.S. at 555, 557).

## IV. Discussion

### A. Motion to Dismiss

#### *1. Count One: Trademark Infringement*

Count One of the complaint alleges trademark infringement under both the Lanham Act, 15 U.S.C. § 1114 and common law. (D.E. 1, Compl. ¶¶ 52-63.) EBIN argues that the Lanham Act claim should be dismissed since § 1114 only applies to registered trademarks, and Pure O currently does not have LOC N registered as a trademark. (D.E. 13, Mtn. to Dismiss, at 7-8.)

The Court agrees with EBIN that the plain language of § 1114 only applies to registered marks. It provides:

**(1)** Any person who shall, without the consent of the registrant--

> **(a)** use in commerce any reproduction, counterfeit, copy, or colorable imitation of a **registered mark** in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> **(b)** reproduce, counterfeit, copy, or colorably imitate a **registered mark** and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.
>
> 15 U.S.C. § 1114(a)-(b) (emphasis added).

The Lanham Act defines a "registered mark" as "a mark registered in the United States Patent and Trademark Office." 15 U.S.C. § 1127. While Pure O is currently applying to the USPTO to register LOC N, the record is silent about whether its application has been adjudicated. This requires dismissal of Pure O's § 1114 claim. *See Renna v. Cnty. of Union, N.J.*, 88 F. Supp. 3d 310, 319 (D.N.J. 2014) (McNulty, J.) (finding that defendant could not sustain its trademark infringement claim under § 1114 because the mark was unregistered).

However, common law permits trademark infringement claims for unregistered marks. *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 291-92 (3d Cir. 1991). "Common law rights are acquired in a . . . mark by adopting and using the mark," not by registering it. *Id.* at 292 (quoting *Caesar's World, Inc. v. Caesar's Palace*, 490 F. Supp. 818, 822 (D.N.J. 1980)). To prove trademark infringement under common law, a plaintiff must show that: "(1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin of the goods or services." *Fisons Horticulture, Inc. v. Vigoro Inds., Inc.*, 30 F.3d 466, 472 (3d Cir.

1994) (citing *Ford Motor*, 930 F.2d at 291); *Arro-Mark Co. v. Warren*, 2024 WL 4053027, at *11 (D.N.J. Sept. 5, 2024) (Semper, J.) (the test for trademark infringement under common law and federal law is the same). The same factors are also applicable to the false designation, passing off, and unfair competition claims found at Counts Two and Three. *See Buying For The Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 317-18 (D.N.J. 2006) (Pisano, J.) (unfair competition); *Hayward Indus., Inc. v. Saltwater Pool Supplies*, 2021 WL 1940711, at *7 (D.N.J. May 14, 2021) (McNulty, J.) (false designation); *Appel v. Masciocchi*, 2008 WL 11383664, at *4 (D.N.J. June 4, 2008) (Simandle, J.) (passing off).

For an unregistered mark to satisfy prong one, it must be "inherently distinctive" or have a secondary meaning.[3] *Fisons Horticulture*, 30 F.3d at 472. A mark is inherently distinctive when it is suggestive; it is not inherently distinctive when it is merely descriptive. *Buying For The Home*, 459 F. Supp. 2d at 318. A mark is suggestive if it "'requires imagination, thought and perception to reach a conclusion' about the nature of the goods or services." *In re N.C. Lottery*, 866 F.3d 1363, 1367 (Fed. Cir. 2017) (quoting *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1251-52 (Fed. Cir. 2012)). A mark is merely descriptive if it "immediately conveys information concerning a feature, quality, or characteristic of the goods or services for which registration is sought." *Id.* (citing *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 963 (Fed. Cir. 2007)). "If the mental leap between the word and the product's attribute is

---

[3] A mark has a secondary meaning when it "is interpreted by the consuming public to be not only an identification of the product or services, but also a representation of the origin of those products or services." *Buying For The Home*, 459 F. Supp. 2d at 318 (quoting *Commerce Nat'l Ins. Serv., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000)). Because the Court finds that the LOC N mark is inherently distinctive, it does not separately consider whether it also has a secondary meaning.

not almost instantaneous, this strongly indicates suggestiveness, not direct descriptiveness." *Nautilus Grp., Inc. v. Icon Health & Fitness, Inc.*, 372 F.3d 1330, 1340 (Fed. Cir. 2004).

EBIN argues the complaint fails to allege that the LOC N mark is inherently distinctive. (D.E. 13, Mtn. to Dismiss, at 11-13.) So, the Court looks to what the complaint alleges: that the USPTO "approved the LOC N application for publication without issuing any descriptiveness refusal" (D.E. 1, Compl. ¶ 9), that another court found the LOC N mark is inherently distinctive, and therefore not descriptive (*id.* ¶ 35), and that EBIN's descriptiveness claim in front of the TTAB was unsupported for the reasons set forth in Pure O's TTAB motion to dismiss (*id.* ¶ 45). Pure O attaches its motion to the TTAB an exhibit,[4] which includes further arguments as to the distinctiveness of the LOC N mark. (*Id.* ¶ 47 & Ex. B, TTAB Mtn. to Dismiss, at 3-6.)

The Court finds that the LOC N mark does not immediately tell the observer what the good is, and so "the mental leap between the word and the product's attribute" is not instantaneous. *Nautilus Grp.*, 372 F.3d at 1340. As Pure O argued to the TTAB, "LOC" "is both: (i) an acronym standing for 'Leave-in conditioner or liquid,' 'Oil' and 'Cream,' and (ii) another term for 'dreadlocks' or 'narrow ropelike strands of hair formed by matting, braiding, and twisting.'" (D.E. 1 & Ex. B, TTAB Mtn. to Dismiss, at 5.) And "LOC N" creates further ambiguity as to what the mark means. (*Id.*) Further, the TTAB, which has the authority to determine trademark rights, approved the LOC N mark for publication without a descriptiveness refusal. The mark is therefore inherently distinctive.

A plaintiff can assert ownership rights over an unregistered mark when it is "the first party to adopt a trademark . . . provided it continuously uses it in commerce." *Ford Motor*, 930

---

[4] The Court may consider exhibits attached to the complaint on a motion to dismiss. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

F.2d at 292. The complaint alleges that Pure O has used the LOC N mark continuously and exclusively since April 2014, well before EBIN's use of the LOCK'N mark in 2019. (D.E. 1, Compl., ¶¶ 14, 24-26, 44.) Pure O can therefore assert ownership rights over the LOC N mark.

A defendant's use of a similar mark is likely to cause confusion to consumers where the defendant has a competitive relationship with the plaintiff, and where the marks are "confusingly similar." *Fisons Horticulture*, 30 F.3d at 472-73 (citations omitted). When this is the case, consumers may assume that the defendant's product is associated with the plaintiff. *Id.* Here, Pure O alleges that EBIN is its direct competitor and that the LOC N and LOCK'N marks are substantially similar so as to cause confusion to the consumers they share. (D.E. 1, Compl. ¶¶ 3, 16, 31-33.) Pure O states that EBIN "has adopted and is using confusingly similar LOCK'N-formative designations in connection with identical goods, marketed to the same consumers through identical channels of trade. Such use is likely to cause confusion, mistake, or deception as to the source, sponsorship, affiliation, or approval of Defendants' goods." (*Id.* ¶ 57.) This is enough to satisfy prong three.

The Court denies EBIN's motion to dismiss Pure O's common law trademark infringement claim but grants its motion as to Pure O's Lanham Act trademark infringement claim.

2. *Count Two: False Designation, Passing Off, Unfair Competition, and Trade Dress Infringement*

Unlike § 1114, § 1125(a) of the Lanham Act does not require a mark to be registered for trademark protection. *Renna*, 88 F. Supp. 3d at 319. As stated, Pure O's false designation, passing off, and unfair competition claims utilize the same test as its common law trademark infringement claims, so these claims also survive.

Sufficiency of the trade dress infringement claim contained in Count Two employs a slightly different test. Trade dress is "the total image or overall appearance of a product, and includes, but is not limited to, such features as size, shape, color or color combinations, texture, graphics, or even a particular sales technique." *Fair Wind Sailing Inc. v. Dempster*, 764 F.3d 303, 308 (3d Cir. 2014) (quoting *Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 171 (3d Cir. 2000)). It is, in essence, the "overall look of a product or business." *Id.* Trade dress is protected to "secure the owner of the trade dress the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Id.* (quoting *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 357 (3d Cir. 2007)).

A plaintiff must prove three elements to establish trade dress infringement under the Lanham Act: "(1) the allegedly infringing design is nonfunctional; (2) the design is inherently distinctive or has acquired secondary meaning; and (3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product." *Id.* at 309 (quoting *McNeil Nutritionals*, 511 F.3d at 357). In addition to satisfying these three elements, the plaintiff must "articulat[e] the specific elements which comprise its distinct dress," which "should be separated out and identified in a list." *Id.* (first quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997); and then quoting 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 8:3 (4th ed. 2014)). As can be seen, prongs two and three overlap with the test for common law trademark infringement discussed *supra*. The remaining questions are then whether EBIN's "allegedly infringing design is nonfunctional," *id.*, and whether Pure O adequately identified the specific elements of its trade dress in the complaint.

"The functionality doctrine . . . forbids the use of a product's feature as a trademark where doing so will put a competitor at a significant disadvantage because the feature is 'essential to the use or purpose of the article' or 'affects [its] cost or quality.'" *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 169 (1995) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851, n.10 (1982)). "[A] feature is nonfunctional where it 'is unrelated to the consumer demand . . . and serves merely to identify the source of the product' or business." *Fair Wind Sailing*, 764 F.3d at 311 (quoting *Prufrock Ltd., Inc. v. Lasater*, 781 F.2d 129, 133 (8th Cir. 1986)). By contrast, "[a] functional feature is one that is 'essential to the use or purpose of the article,' 'affects the cost or quality of the article,' or one that, if kept from competitors, would put them at a 'significant non-reputation-related disadvantage.'" *Id.* at 310-11 (quoting *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33 (2001)); *see TraFix Devices*, 532 U.S. at 32 ("In general terms, a product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." (citation modified)).

A design's "aesthetic value" is functional only if it confers "a significant benefit that cannot practically be duplicated by the use of alternative designs." *Qualitex*, 514 U.S. at 170 (quoting Restatement (Third) of Unfair Competition § 17, cmt. c, pp. 175-176 (1993)). "[A] finding of aesthetic functionality ordinarily will be made only when objective evidence indicates a lack of adequate alternative designs," and the "ultimate test of aesthetic functionality, as with utilitarian functionality, is whether the recognition of trademark rights would significantly hinder competition." Restatement (Third) of Unfair Competition § 17, cmt. c.

Here, Pure O's trade dress is identified as "The LOC N mark" which "features the term 'LOC N' in block-style gold lettering, with 'LOC' positioned above a larger, stylized 'N' that

incorporates the specific product name, all set against a burgundy background that transitions to a darker shade in an ombré effect toward the lower left." (D.E. 1, Compl. ¶ 13.) This identifies that the product comes from Pure O, the owner of LOC N. There is no evidence that similar designs are unavailable to competing manufacturers, and the number of aesthetic alternative designs that Pure O could utilize is unlimited. The design is therefore nonfunctional and protectable as a trademark.

EBIN challenges that the complaint does not identify the elements of the LOC N mark in list form, so it does not have adequate notice of what the trade dress is. (D.E. 13, Mtn. to Dismiss, at 9-10.) In opposition, Pure O alleges its trade dress is comprised of the block-style gold lettering with "LOC" positioned above the "N" and the "N" incorporating the product name, all set against a burgundy background with an ombré transition, although it does not cite to where that information came from in the complaint. (D.E. 14, Opp., at 6.) In reply, EBIN accuses Pure O of attempting to amend the complaint by its opposition to add "the elements of the trade dress." (D.E. 19, Reply, at 6.)

But this information is contained in the complaint at paragraph 13:

> Over time, the LOC N product line expanded to include LOC N Loc & Braid Growth Oil, LOC N Shine Spray, and related goods, sold to distributors who in turn sell to consumers, and recognized for their high-quality ingredients and the unique benefits they provide for locks and braids. The LOC N mark features the term "LOC N" in block-style gold lettering, with "LOC" positioned above a larger, stylized "N" that incorporates the specific product name, all set against a burgundy background that transitions to a darker shade in an ombré effect toward the lower left.
>
> (D.E. 1, Compl. ¶ 13; *see also id.* ¶ 94 (identifying the LOC N mark as having "red/maroon/burgundy with gold lettering and burgundy ombré trade dress").)

While it is true that this information is in paragraph form as opposed to in a list, EBIN's concession that Pure O appears to list "the elements of the trade dress," (D.E. 19, Reply, at 6),

informs the Court that this information gives EBIN fair notice of what the LOC N trade dress encompasses. The Third Circuit has not mandated that this information has to be in a list to avoid dismissal. *Fair Wind Sailing*, 764 F.3d at 309; *see also Aroma Depot, Inc. v. Plant Guru, Inc.*, 2025 WL 1685936, at *1 (D.N.J. June 16, 2025) (Farbiarz, J.) (declining to dismiss trade dress claim where the plaintiff merely provided images of its trade dress, as opposed to listing the specific elements of its trade dress). The Court finds that Pure O sufficiently identified the elements that make up its trade dress.

EBIN's motion to dismiss Count Two is denied.

*3. Count Three: Common Law Unfair Competition*

A common law unfair competition claim utilizes the same test as common law trademark infringement. For the reasons discussed *supra*, EBIN's motion to dismiss Count Three is denied.

**B. Motion to Strike**

EBIN moves to strike paragraphs 34 through 39 of the complaint and paragraph F of the prayer for relief. (D.E. 13, Mtn. to Dismiss, at 15-17.) It argues that the case described in paragraphs 34 through 39 has no relation to this case and may cause it prejudice or confuse the issues. (*Id.* at 15-16.) It further argues that Pure O seeks contract remedies in paragraph F, but there is no contract that it can sue under, so the reference is immaterial. (*Id.* at 17.)

Under Fed. R. Civ. P. 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." In this district, "motions to strike under Rule 12(f) are highly disfavored" and will generally be denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Bello v. United Pan Am Fin. Corp.*, 2024 WL 2354449, at *2 (D.N.J. May 23, 2024) (O'Hearn, J.) (first quoting *F.T.C. v. Hope Now Modifications, LLC*, 2011 WL 883202, at *2

(D.N.J. Mar. 10, 2011) (Simandle, J.); and then quoting *U.S. v. Boston Sci. Neuromodulation Corp.*, 2014 WL 4402118, at *3 (D.N.J. Sept. 4, 2014) (Wigenton, J.)). "[A]ny doubt as to whether striking a pleading is appropriate should be resolved in favor of the pleading." *Id.* (citation and quotation marks omitted).

Paragraphs 34 through 39 of the complaint detail a court case out of the Northern District of Georgia between Pure O and defendants that EBIN claims it has no relation to. Pure O sued these defendant companies on grounds they infringed on its trademark rights in the LOC N mark. (D.E. 1, Compl. ¶¶ 34-36.) These paragraphs clearly support Pure O's claim that it has senior trademark rights. Moreover, EBIN's arguments about prejudice are more properly addressed in the context of admissible evidence. The Court denies EBIN's motion to strike paragraphs 34 through 39.

The Court agrees with EBIN, however, as to its motion to strike paragraph F of the prayer for relief, which asks for "Contract Remedies (if adjudicated here): specific performance, injunctive relief, damages, and attorneys' fees per the Coexistence Agreement." (*Id.* at Prayer for Relief ¶ F.) EBIN argues that the referenced coexistence agreement was never agreed to by the parties. (D.E. 13, Mtn. to Dismiss, at 17.) The complaint itself confirms that "[t]he parties engaged in, but did not finalize, a proposed Consent to Registration/Coexistence Agreement that included material restrictions on EBIN (e.g., no LOC N/LOCN-formative marks; bans on red/maroon/burgundy with gold lettering and burgundy ombré trade dress; confusion avoidance covenants)." (D.E. 1, Compl. ¶ 94.) Because there appear to be no contractual remedies that Pure O can recover, the Court strikes paragraph F as immaterial.

## V. Conclusion

For the foregoing reasons, EBIN's motion to dismiss Pure O's Lanham Act trademark infringement claim in Count One and its motion to strike paragraph F is granted. Otherwise, the motion is denied. An appropriate order accompanies this opinion.

Dated: August 19, 2026

*/s/ Katharine S. Hayden*
Katharine S. Hayden, U.S.D.J.